# EXHIBIT 2

Case 1:20-cv-02320-JMS-TAB Document 1-2 Filed 09/04/20 Page 2 of 16 PageID #: 70
49D01-2008-CT-028463
Filed: 8/19/2020 3:56 PM
Clerk
Marion County, Indiana
Marion Superior Court, Civil Division 1

# INDIANA COMMERCIAL COURT DOCKET CASE

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-2008-CT- |

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC and DUJUAN MCCOY, | ) ) ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| AT&T CORP d/b/a U-VERSE and DIRECTV, | ) ) ) ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Circle City Broadcasting I, LLC ("Circle City") and DuJuan McCoy ("McCoy") and file this Complaint and Jury Demand against AT&T Corp d/b/a U-VERSE and DIRECTV ("AT&T"), and would show the Court as follows:

### I. INTRODUCTION

1. This is a lawsuit for the defamation of McCoy and Circle City by AT&T arising out of the business relationship (or more specifically the lack thereof) between McCoy's business, Circle City, and AT&T. Circle City recently sued AT&T in federal court in Indianapolis alleging race discrimination in making and enforcing contracts in violation of 42 U.S.C. § 1981 (the "1981 Case"). AT&T has defamed Circle City and McCoy in its public comments about the 1981 Case. Because the relationship between McCoy, Circle City, and AT&T is a business one, this case qualifies as a Commercial Court case under Commercial Court Rule 2(E)(9) and (13).

2. McCoy is domiciled in Texas but also maintains a residence in Indiana. His company, Circle City, owns WISH-TV and WNDY, two local television stations he acquired in

September 2019. McCoy is an African-American who has achieved significant success in the business of broadcast television. In many ways he is a pioneer. Even AT&T recognized that his acquisition of WISH-TV and WNDY was the first transaction of its kind in the United States.

3. McCoy maintains a high profile in the broadcast industry. As a native Hoosier and a graduate of Ben Davis High School and Butler University, McCoy engaged in a media campaign to highlight his return to the Indianapolis market through the acquisition of WISH-TV and WNDY. He is active in the day-to-day management of WISH-TV and WNDY and is regularly engaged with business leaders, customers, viewers, and the public concerning matters involving the stations. He is closely identified with Circle City from a publicity standpoint.

4. AT&T is a national telecom company who, through its subsidiaries U-Verse and DirecTV, provides multichannel video programming distribution using satellite and wired telecommunications systems. It is a New York corporation with a principal place of business in New Jersey.

5. Venue is proper in this Court because McCoy has a residence here, because McCoy and Circle City conduct the business of WISH-TV and WNDY here, and because AT&T does business here.

6. Circle City alleged in the 1981 Case that since September 19, 2019, it has patiently attempted to negotiate an agreement with AT&T for AT&T to distribute Circle City's television content to consumers in Indianapolis, Indiana and the surrounding area after Circle City purchased the stations from Nexstar Broadcasting, Inc. ("Nexstar"). AT&T had such an agreement with the seller, Nexstar; however, AT&T has refused to negotiate any retransmission agreement with Circle City, offering it **zero** for its content.

7. AT&T justified its refusal to contract with Circle City on the grounds that it is AT&T's "policy to not pay license fees for standalone non-Big 4 broadcast stations" and further stated "it does not make sense for us ultimately to charge consumers for standalone non Big-4 stations." Circle City alleged that this justification was a lie because AT&T did with Nexstar exactly what it told McCoy it had a policy against. Specifically, when Nexstar owned the stations, Nexstar did not own other stations in the Indianapolis market. Consequently, Nexstar's stations were "standalone non-Big 4 broadcast stations," yet AT&T agreed to pay Nexstar for the rebroadcast of Nexstar's content on WISH-TV and WNDY.

8. In the 1981 Case, Circle City alleged that AT&T maintains an internal playbook designed to suppress minority-based content. Further, AT&T officials view Circle City's acquisition of its two Indianapolis broadcast stations as "the first of its kind" and AT&T does not want to "open the floodgates to start paying people like this."

9. In response to the 1981 Case, AT&T has made public comments about McCoy and Circle City through Teresa Mask ("Mask"), who describes herself as the "Lead Public Relations Manager" for AT&T. An example of the public statements made by Mask is attached as Exhibit 1.

10. In public statements disseminated to media outlets requesting comment on the 1981 Case, Mask stated that the 1981 Case is a "negotiating tactic" which Circle City utilized "only after we [AT&T] declined its demands for compensation above and beyond what similar independent stations receive." *See* Ex. 1.

11. Mask attempted to downplay McCoy's and Circle City's allegations of race discrimination in the 1981 Case by saying in public releases about the case that AT&T "recently completed more extensive agreements with other minority-owned broadcasters including one who recently paid Circle City's owner $165 million to acquire his former stations." Ex. 1. Mask failed

3

to mention that the "minority-owned broadcaster" specifically referenced in Mask's statement had sued AT&T for $10 billion in a 2014 race discrimination lawsuit concerning AT&T's refusal to contract with African-American owned programmers. AT&T eventually settled that lawsuit and, upon information and belief, it is through that settlement that AT&T grudgingly contracted with the broadcaster in question.

12. As intended by Mask, media reports reported her statement in news articles covering the 1981 Case, which had the effect of expanding the audience to which the defamatory statements were published. As an example, a copy of an article written by Anthony Schoettle wrote for the Indianapolis Business Journal (which was also published by the Indiana Lawyer) is attached as Exhibit 2.

13. The context in which Mask made her statements is significant. Carriage disputes occur from time to time with multichannel video programming distributors ("MVPDs") like AT&T. But this dispute is different. AT&T has stated that McCoy's transaction with Nexstar was the first of its kind, namely, that an African American was able to purchase stand-alone, independent stations that would be operated entirely independently, without assistance from or affiliation with any other broadcast company. AT&T has said that it does not want to "open the floodgates to start paying people like this."

14. Mask's comment is false and defamatory of McCoy and Circle City, because in context, Mask is saying to McCoy's community of business leaders, customers, viewers, and the public that McCoy is greedy and demanding through Circle City compensation to which he and his company are not entitled. The underlying sentiment is that McCoy is stealing from the Indianapolis community by demanding such unreasonable compensation from AT&T.

15. In reality, McCoy, through Circle City, simply requested the market rate for the channels in question, as paid to the previous owner. To plaintiffs knowledge, AT&T based its consumer prices on that rate and those prices remain unchanged even though AT&T is no longer paying for the right to distribute content from WISH-TV and WNDY. AT&T's presentation of the issue as a "negotiating tactic" by McCoy and Circle City and its misrepresentation of the market rates for the stations in question and is designed to impugn McCoy's and Circle City's reputation, character, and standing in the community.

16. MVPDs like AT&T regularly in engage in misleading marketing campaigns to blame the local broadcaster in carriage disputes, and it has done so here. *See, e.g,* https://www.att.com/tvpromise/#ALERT_BANNER1 (last visited Aug. 17, 2020). This regularly causes the consumer to blame the local broadcaster, which causes the broadcaster to receive complaints and related communications from the public. Ironically, it is often the local nature of broadcasters, and their continuing service to and interaction with their local communities that leads consumers to first complain to those broadcasters, rather than the national conglomerate MVPDs such as AT&T.

17. By accusing Circle City of using a negotiating tactic when AT&T knows that McCoy asked for nothing more than what AT&T was paying Circle City's predecessor for the same stations and in light of AT&T's checkered history with minority-owned broadcasters and race discrimination claims, AT&T intends for the public to develop the false impression that McCoy is the sole cause of the impasse and conclude that McCoy is a money-grubbing station owner, attempting to extract increased fees from AT&T as a new owner, when that is not true.

18. This is defamation per quod, if not per se.

5

19. McCoy and Circle City have been damaged by AT&T's conduct. This includes general reputational damage and special economic damages.

20. AT&T's conduct, as alleged above, constitutes malicious, oppressive, premeditated, fraudulent, willful and wanton tortious behavior, in blatant disregard of Circle City's and McCoy's rights, for which they should recover punitive damages in an amount sufficient to deter AT&T and other persons similarly situated from engaging in similar conduct in the future.

## JURY DEMAND

Circle City and McCoy demand a jury trial.

## PRAYER FOR RELIEF

Plaintiffs pray that:

A. Plaintiffs be granted judgment against Defendant for their damages, actual and exemplary;

B. Plaintiffs be granted judgment against Defendant for pre-judgment interest and post-judgment interest at the maximum legal rate;

C. Plaintiffs be granted judgment against Defendant for their costs of court and any other recoverable cost available; and

D. Plaintiffs be granted such other and further relief, special or general, legal or equitable, as Plaintiff may show that it is justly entitled to receive.

Respectfully submitted,

/s/ *Andrew M. McNeil*
Andrew M. McNeil (#19140-49)
Gregory F. Hahn (#10547-49)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 (Fax)
amcneil@boselaw.com
ghahn@boselaw.com

John Bruse Loyd (TX 24009032)
Jones, Gillaspia & Loyd, LLP
4400 Post Oak Pkwy., Suite 2360
Houston, TX 77027
(713) 240-5646
bruse@jgl-law.com

Daniel A. Kirkpatrick (VA #65639)
Fletcher, Heald & Hildreth, PLC
1300 North 17th Street, 11th Floor
Arlington, VA 22209
(703) 812-0432
kirkpatrick@fhhlaw.com

*Attorneys for Plaintiffs*

3911959

# Circle City - AT&T Comment

MASK, TERESA <tm824q@att.com>
Tue 8/11/2020 1:54 PM
To: Brady Gibson <Brady.Gibson@wishtv.com>

Hi Brady,

You were asking about our public response to the lawsuit filed Monday by Circle City Broadcasting against AT&T. Here is our statement:

"These allegations are baseless and we will fight them in court. This is a straightforward negotiation over retransmission fees. Circle City sued as a negotiating tactic only after we declined its demands for compensation above and beyond what similar independent stations receive."

You can attribute that statement to AT&T or to me. My title would be spokesperson.

Here is some more information that might be useful:

- We apply a non-discriminatory approach to these negotiations that ensures consistency and fairness while keeping fees low for our customers.
- We have been a DiversityInc "Top 50 Companies for Diversity" for 19 consecutive years. We earned the prestigious Hall of Fame spot on the 2020 list.
- Contrary to these allegations, we have recently completed more extensive agreements with other minority-owned broadcasters including one who recently paid Circle City's owner $165 million to acquire his former stations.
- This is a tactic Circle City is using. They also sued Dish Network, on virtually identical grounds.
- Our 2019 supplier diversity spend was $14.2 billion, which represents 26.4% of AT&T's procurement spend.
- In early 2019, we expanded our Supplier Diversity program with a commitment to spend $3B with Black suppliers by the end of 2020.

Thanks,

**Teresa Mask**
Lead Public Relations Manager

AT&T Corporate Communications
teresa.mask@att.com
248-205-0161
Twitter: @TeresaMask

EXHIBIT 1


THE INDIANA LAWYER

# WISH-TV sues AT&T over fee negotiations, claims racial discrimination

August 17, 2020 | Anthony Schoettle, Indianapolis Business Journal

KEYWORDS **COURTS / DISCRIMINATION / DISTRICT COURTS / INDIANAPOLIS / JUDGE TANYA WALTON PRATT / LAWSUIT / LAWSUITS / MAGISTRATE JUDGE TIM A. BAKER / SOUTHERN DISTRICT / TV / U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA**

Indianapolis-based Circle City Broadcasting, which owns WISH-TV Channel 8 and WNDY-TV Channel 23, has filed a lawsuit that accuses AT&T of racial discrimination as the two companies battle over retransmission fees.

The suit, filed last week in district court in Indianapolis, involves fees that Circle City is seeking for the retransmission of WISH and WNDY on AT&T's Uverse and DirecTV cable and satellite services. Circle City filed a similar lawsuit against Dish TV earlier this year.

Cable and satellite television companies typically pay station owners a fee per household to retransmit stations on their cable or satellite services.

Circle City officials said they have been attempting to negotiate with AT&T since September. When an agreement couldn't be reached, WISH and WNDY were pulled from AT&T-owned Uverse and DirecTV on Jan. 31.

In its lawsuit, WISH claims that while AT&T was paying the stations' previous owner, Nexstar Broadcasting Inc., a retransmission fee to carry the stations on its services, it refuses to pay Circle City for the same retransmission.

Circe City is owned by DuJuan McCoy, who is Black.

"This case is a result of AT&T refusing to negotiate a contract with Circle City because the stations in question are now owned by a Black man, a Black man who has made a career out of advancing the cause of Blacks and other minorities in media ownership and leadership," Circle City's lawsuit says. "AT&T only deals fairly with historically more established broadcasters (namely, white-owned) when negotiating carriage agreements. It insists on maintaining its decades-long policies and practices of discriminating against the minority broadcaster, the broadcaster that never had the chance to become one of the historically more established broadcasters and thus remains perpetually ineligible to do business with AT&T. The effect has been to exclude minority broadcasters and deny them a seat at the table of American media ownership and management."

Circle City is suing "for retransmission fees at a fair market rate, other lost revenue, actual and punitive damages, interest, reasonable attorneys' fees and costs resulting from the intentional misconduct exhibited by AT&T." It did not specify a dollar amount.

2 Free Articles Remaining  |  Get Full Digital Access to The Indiana Lawyer! Subscribe Now

EXHIBIT 2

"I am not only representing myself and my company, I am also representing all the other voices and people who want to follow in my footsteps," McCoy told the Indianapolis Business Journal. "So advocating and fighting for equal and fair treatment is part of my purpose."

AT&T vehemently denies the allegations in the lawsuit.

"These allegations are baseless and we will fight them in court," AT&T said in a written statement sent to IBJ. "This is a straightforward negotiation over retransmission fees. Circle City sued as a negotiating tactic only after we declined its demands for compensation above and beyond what similar independent stations receive."

McCoy said AT&T offered his company "zero" for the retransmission of its stations.

AT&T told IBJ the company applies "a non-discriminatory approach to these negotiations that ensures consistency and fairness while keeping fees low for our customers."

AT&T added: "Contrary to these allegations, we have recently completed more extensive agreements with other minority-owned broadcasters, including one who recently paid Circle City's owner $165 million to acquire his former stations."

In a March lawsuit, Circle City accused Dish of racial discrimination as the two sides negotiated retransmission fees for WISH and WNDY. That case is still pending. The National Association of Black Owned Broadcasters joined Circle City Broadcasting in that lawsuit.

McCoy said the Dish TV lawsuit is "in the discovery process."

The two lawsuits could be heading for an intersection of sorts.

Earlier this month, Dish Network Chairman Charlie Ergen told investment analysts and media members during Dish's second quarter earnings call that a merger between DishTV and DirecTV is "inevitable."

The case is *Circle City Broadcasting I, LLC v. AT&T Corp.*, 1:20-cv-02108. It has been assigned to Judge Tanya Walton Pratt and Magistrate Judge Tim A. Baker.

2 Free Articles Remaining | Get Full Digital Access to The Indiana Lawyer! Subscribe Now

# INDIANA COMMERCIAL COURT DOCKET CASE

| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-2008-CT- |

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC and DUJUAN MCCOY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| AT&T CORP d/b/a U-VERSE and DIRECTV, | ) ) ) |
| Defendant. | ) ) |

## APPEARANCE BY ATTORNEY IN CIVIL CASE

1.  The party on whose behalf this form is being filed is:

    Initiating __X__     Responding ____     Intervening ____ ; and
    the undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:
    Name of party **Plaintiffs, Circle City Broadcasting I, LLC and DuJuan McCoy**
    Address of party *(see Question # 5 below if this case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order)*

    Telephone # of party _____
    *(List on a continuation page additional parties this attorney represents in this case.)*

2.  Attorney information for service as required by Trial Rule 5(B)(2)

    Andrew M. McNeil                 Attorney No. 19140-49
    Gregory F. Hahn                  Attorney No. 10547-49
    BOSE MCKINNEY & EVANS LLP        Phone: (317) 684-5000
    111 Monument Circle, Suite 2700  Fax: (317) 684-5173
    Indianapolis, IN 46204           Computer Address:
                                     AMcNeil@boselaw.com
                                     GHahn@boselaw.com

**IMPORTANT**: Each attorney specified on this appearance:

(a) certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b) **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney; and**

(c) understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3. This is a **CT** case type as defined in administrative Rule 8(B)(3).

4. This case involves child support issues. Yes ____ No X *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order. Yes ____ No X *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)* The party shall use the following address for purposes of legal service:

   _____  Attorney's address
   _____  The Attorney General Confidentiality program address
              (contact the Attorney General at 1-800-321-1907 or e-mail address is
              **confidential@atg.state.in.us**).
   _____  Another address (provide) _____

6. This case involves a petition for involuntary commitment. Yes ____ No X

   If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

   (a) Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above:
   _____

   (b) State of Residence of person subject to petition: _____

   (c) At least one of the following pieces of identifying information:
       (i)  Date of Birth _____
       (ii) Driver's License Number _____
            State where issued _____ Expiration date _____

2

   (iii) State ID number _____

     State where issued _____ Expiration date _____

   (iv) FBI number _____

   (v) Indiana Department of Corrections Number _____

   (vi) Social Security Number is available and is being provided in an attached confidential document Yes ____ No ____

7. There are related cases: Yes ____ No X *(If yes, list on continuation page.)*

8. Additional information required by local rule:

  _____

9. There are other party members: Yes ____ No X *(If yes, list on continuation page.)*

10. This form has been served on all other parties and Certificate of Service is attached:

  Yes ___ No X

        Respectfully submitted,

        */s/ Andrew M. McNeil*
        Andrew M. McNeil

        */s/ Gregory F. Hahn*
        Gregory F. Hahn

        *Attorneys for Plaintiffs*

3913463

3

# INDIANA COMMERCIAL COURT DOCKET CASE

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-2008-CT- |

CIRCLE CITY BROADCASTING I, LLC )
and DUJUAN MCCOY, )
　　　　　　　　　　　　　　　　)
　　　Plaintiffs, )
　　　　　　　　　　　　　　　　)
v. )
　　　　　　　　　　　　　　　　)
AT&T CORP d/b/a U-VERSE and )
DIRECTV, )
　　　　　　　　　　　　　　　　)
　　　Defendant. )

## NOTICE IDENTIFYING COMMERCIAL COURT DOCKET CASE

The undersigned states that this case is a Commercial Court Docket Case eligible for assignment to the Commercial Court Docket pursuant to Rule 2(E)(9) and (13) of the Commercial Court Rules. Pursuant to Rule 4 of the Commercial Court Rules, the undersigned requests the Clerk of Court assign this case to the Commercial Court Docket of Marion Superior Court 1.

　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ *Andrew M. McNeil*
　　　　　　　　　　　　　　　　　Andrew M. McNeil (#19140-49)
　　　　　　　　　　　　　　　　　Gregory F. Hahn (#10547-49)

　　　　　　　　　　　　　　　　　BOSE McKINNEY & EVANS LLP
　　　　　　　　　　　　　　　　　111 Monument Circle, Suite 2700
　　　　　　　　　　　　　　　　　Indianapolis, IN 46204
　　　　　　　　　　　　　　　　　(317) 684-5000; (317) 684-5173 (Fax)
　　　　　　　　　　　　　　　　　amcneil@boselaw.com
　　　　　　　　　　　　　　　　　ghahn@boselaw.com

John Bruse Loyd (TX 24009032)
Jones, Gillaspia & Loyd, LLP
4400 Post Oak Pkwy., Suite 2360
Houston, TX 77027
(713) 240-5646
bruse@jgl-law.com

Daniel A. Kirkpatrick (VA #65639)
Fletcher, Heald & Hildreth, PLC
1300 North 17th Street, 11th Floor
Arlington, VA 22209
(703) 812-0432
kirkpatrick@fhhlaw.com

*Attorneys for Plaintiffs*

3913467