## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CIRCLE CITY BROADCASTING I, LLC and DUJUAN MCCOY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-02320-TWP-TAB |
| AT&T CORP. d/b/a U-VERSE and DIRECTV | ) ) ) ) | Removed from the Marion Superior Court in Marion County, Indiana Case No. 49D01-2008-CT-028463 |
| Defendant. | ) ) | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Plaintiff Circle City Broadcasting I, LLC ("Circle City") sued Defendant AT&T Corp. d/b/a U-Verse and DIRECTV[1] for race discrimination after negotiations over a retransmission consent agreement reached an impasse and AT&T declined to pay Circle City its requested retransmission fees for two Indianapolis television stations, WISH-TV and WNDY-TV. After Circle City filed the lawsuit, a reporter from WISH asked AT&T to provide a comment for a news story on the litigation. When AT&T responded that the lawsuit was baseless and a negotiating tactic, Circle City and its owner, Plaintiff DuJuan McCoy ("McCoy"), immediately filed a defamation action, asserting the exact public statement WISH solicited and published was defamatory.

---

[1] AT&T disputes that AT&T Corp. is the proper defendant in this proceeding, as it does not do business as either U-Verse or DIRECTV. The entity that operates the DIRECTV business is DIRECTV, LLC.

1

Plaintiffs' lawsuit should be dismissed for two reasons. First, the lawsuit is an attempt to punish AT&T for the exercise of its First Amendment rights and intimidate AT&T into silence in the face of inflammatory and misplaced accusations that concern matters of public importance. Because AT&T's statements are protected as opinion and were not made with actual malice, AT&T's statements are lawful. Indiana's anti-SLAPP statute was enacted to prevent lawsuits like this one, aimed at stifling lawful speech, by permitting a SLAPP defendant to obtain an early dismissal and its attorneys' fees.

Second, even setting aside the technical requirements of the anti-SLAPP statute, Plaintiffs' Complaint fails to state a defamation claim as a matter of law for many of the same reasons that AT&T's speech is lawful in the first instance. Moreover,  Plaintiffs have not alleged any facts that would support a finding of actual malice or special damages, and dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6).

## I.   BACKGROUND

### A.  AT&T and Circle City Attempt to Negotiate a Retransmission Agreement.

AT&T is a multichannel video programming distributor ("MVPD"). (Compl. ¶ 16.)[2] As is typical for MVPDs, AT&T enters into retransmission consent agreements with television channels in order to distribute their content to its customers. (*Id.* ¶ 6.) Circle City is a minority-owned local television broadcasting company that owns two Indianapolis channels: WISH and WNDY. (*Id.* ¶ 2.) Circle City purchased those stations in 2019 from a large national broadcasting company, Nexstar Broadcasting, Inc. ("Nexstar"). When Nexstar owned WISH and WNDY, it negotiated one retransmission consent agreement with AT&T for its entire portfolio

---

[2] AT&T accepts the allegations in Circle City's Complaint as true only for purposes of this motion, as it is required to do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

ACTIVE.125046798.14

of stations, which enabled it to obtain terms that reflected its unparalleled market strength. In relevant part, Nexstar was able to leverage its national portfolio to require AT&T to pay for the right to retransmit certain stations, including WISH and WNDY in Indianapolis.

After Circle City acquired the stations, it sought a new retransmission consent agreement and demanded AT&T pay for the rights to retransmit WISH and WNDY. (*Id.* ¶ 6.) AT&T refused because, unlike Nexstar, Circle City is a local television company that owns only two stations, WISH and WNDY, which are "standalone non-Big 4 broadcast stations."[3] (*Id.* ¶ 7.) Although AT&T repeatedly tried to engage Circle City to reach a retransmission consent agreement on other terms, Circle City refused to accept AT&T's common-sense economic explanation for refusing to pay Circle City's requested rates. (*See id.* ¶ 7.)

Instead, Circle City filed a lawsuit in this Court, accusing AT&T of discriminating on the basis of race in violation of 42 U.S.C. § 1981 when it declined to pay Circle City's requested rates (the "1981 Lawsuit"). (*Id.* ¶ 1, 6.) *See generally Circle City Broadcasting I, LLC v. AT&T Corp. d/b/a U-Verse and DIRECTV*, No. 1:20-cv-2108-TWP-TAB (S.D. Ind. 2020). The 1981 Lawsuit against AT&T is not unique. Circle City has also accused DISH Network, LLC, another national MVPD, of race discrimination because it also declined to pay Circle City's desired retransmission fees. *See generally Circle City Broadcasting I, LLC et al v. DISH Network, LLC*, No. 1:20-cv-750-TWP-TAB (S.D. Ind. 2020).

---

[3] The "Big 4" broadcast stations are ABC, CBS, Fox, and NBC. *See* Federal Communications Commission, *Consumer Guide: FCC Broadcast Ownership Rules*, https://www.fcc.gov/sites/default/files/fcc_broadcast_ownership_rules.pdf (Jan. 17, 2020).

ACTIVE.125046798.14

**B.**   **AT&T Responds to a Request for Public Comment on the 1981 Lawsuit.**

After Circle City sued AT&T for race discrimination, WISH, one of Circle City's

television stations, asked AT&T to comment on the lawsuit for a news story. (Compl. Ex. 1.)

AT&T's response, in full, was:

> **Circle City - AT&T Comment**
>
> MASK, TERESA <tm824q@att.com>
> Tue 8/11/2020 1:54 PM
> To: Brady Gibson <Brady.Gibson@wishtv.com>
> Hi Brady,
>
> You were asking about our public response to the lawsuit filed Monday by Circle City Broadcasting against AT&T. Here is our statement:
>
> "These allegations are baseless and we will fight them in court. This is a straightforward negotiation over retransmission fees. Circle City sued as a negotiating tactic only after we declined its demands for compensation above and beyond what similar independent stations receive."
>
> You can attribute that statement to AT&T or to me. My title would be spokesperson.
>
> Here is some more information that might be useful:
>
> - We apply a non-discriminatory approach to these negotiations that ensures consistency and fairness while keeping fees low for our customers.
> - We have been a DiversityInc "Top 50 Companies for Diversity" for 19 consecutive years.  We earned the prestigious Hall of Fame spot on the 2020 list.
> - Contrary to these allegations, we have recently completed more extensive agreements with other minority-owned broadcasters including one who recently paid Circle City's owner $165 million to acquire his former stations.
> - This is a tactic Circle City is using.  They also sued Dish Network, on virtually identical grounds.
> - Our 2019 supplier diversity spend was $14.2 billion, which represents 26.4% of AT&T's procurement spend.
> - In early 2019, we expanded our Supplier Diversity program with a commitment to spend $3B with Black suppliers by the end of 2020.
>
> Thanks,
>
> **Teresa Mask**
> Lead Public Relations Manager
>
> AT&T Corporate Communications
> teresa.mask@att.com
> 248-205-0161
> Twitter: @TeresaMask

(*Id.*)

AT&T's statement was repeated in several local news articles covering the 1981 Lawsuit. (*Id.*

¶ 12.) The statement does not refer to McCoy by name. (*See generally* Compl. Ex. 1.)

### C.  Circle City and DuJuan McCoy Sue AT&T for Defamation Per Quod.

After AT&T provided WISH with the statement, Circle City and McCoy sued AT&T in Indiana state court,[4] claiming the very statement WISH elicited and publicized is "false and defamatory." According to Plaintiffs, AT&T's characterization of the 1981 Lawsuit as a "negotiating tactic" gives the public a "false impression" about Circle City's motives for filing the 1981 Lawsuit and the reason the parties did not enter into a retransmission agreement. (Compl. ¶¶ 14, 17.) They allege "defamation per quod, if not per se," and claim "general reputational damage and special economic damages." (*Id.* ¶¶ 18-19.)

## II.   Circle City's Complaint Should Be Dismissed Under Indiana's Anti-SLAPP Statute.

Plaintiffs' lawsuit must be dismissed pursuant to Indiana's anti-SLAPP statute. The lawsuit is nothing more than a meritless attempt by Circle City to silence AT&T's ability to respond to a lawsuit that alleges AT&T engaged in racial discrimination. AT&T was acting in furtherance of its First Amendment rights when it responded to WISH's request for public comment on the 1981 Lawsuit, and both the 1981 Lawsuit and the underlying negotiations between Circle City and AT&T are public issues. Indiana's anti-SLAPP statute requires dismissal because AT&T made the statement in good faith and its description of the 1981 Lawsuit as a "negotiating tactic" does not have a defamatory imputation as a matter of law because it is pure opinion and not an objectively verifiable statement of fact.  Further, because AT&T's statement regarding the 1981 Lawsuit relates to a matter of public concern, Plaintiffs are required to—and have not—pleaded that AT&T acted with actual malice in responding to WISH-TV's request for comment.  For these reasons, AT&T is entitled to judgment as a matter

---

[4] AT&T timely and properly removed the state court action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. [Dkts, 1, 8, 17, 21.]

ACTIVE.125046798.14

of law under Indiana's anti-SLAPP statute, as well as its reasonable attorneys' fees and costs incurred in defending against Plaintiffs' claim. *See* IND. CODE § 34-7-7-5, -7, -9.

**A.  Plaintiffs' Lawsuit Is a Strategic Lawsuit Against Public Participation.**

Plaintiffs' Complaint must be dismissed under Indiana's anti-SLAPP statute. "'SLAPPS,' or Strategic Lawsuits Against Public Participation, are 'meritless suits aimed at silencing a plaintiff's opponents, or at least at diverting their resources.'" *Brandom v. Coupled Prods., LLC*, 975 N.E.2d 382, 385 (Ind. Ct. App. 2012) (quoting *Hamilton v. Prewett*, 860 N.E.2d 1234, 1242-42 (Ind. Ct. App. 2007)). Indiana's anti-SLAPP statute "is intended to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Hamilton*, 860 N.E.2d at 1241-42. It is "an affirmative defense" to defamation claims that may be enforced with a motion to dismiss. *Pack v. Truth Publ'g Co.*, 122 N.E.3d 958, 964 (Ind. Ct. App. 2019).

"Upon receiving an anti-SLAPP motion to dismiss, the court must determine three things: (1) whether an action was 'in furtherance of the person's right of petition or free speech;' and, (2) if so, whether the action was 'in connection with a public issue.' If both requirements are satisfied, the court then analyzes (3) whether the action was 'taken in good faith and with a reasonable basis in law and fact.'" *Gresk ex rel. Estate of VanWinkle v. Demetris*, 96 N.E.3d 564, 569 (Ind. 2018) (citations omitted). An anti-SLAPP motion to dismiss is treated "as a motion for summary judgment," IND. CODE § 34-7-7-9(a)(1), and it must be granted if the defendant establishes that its speech is covered by the Act and is lawful. *See, e.g.*, *Shepard v. Schurz Comms., Inc.*, 847 N.E.2d 219, 224 (Ind. Ct. App. 2006); *CanaRx Servs., Inc. v. LIN Television Corp.*, No. 1:07-cv-1482-LJM-JMS, 2008 WL 2266348, at *6 (S.D. Ind. May 29, 2008). A prevailing defendant is also "entitled to recover reasonable attorney's fees and costs." IND. CODE § 34-7-7-7. Federal courts treat Indiana's anti-SLAPP statute as substantive Indiana law that

governs in cases arising under diversity jurisdiction. *See, e.g.*, *Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, No. 1:07-cv-0997-DFH-TAB, 2009 WL 838549, at *8 (S.D. Ind. Mar. 26, 2009) ("The anti-SLAPP statute provides a complete defense to defamation and also provides the remedy of attorney fees to a victorious defendant. These are substantive provisions of Indiana law that govern in this diversity jurisdiction case.").

### 1.   AT&T's statement was made in furtherance of AT&T's right to free speech.

The sole statement that forms the basis of Plaintiffs' defamation claim is one AT&T made in response to a request for public comment by WISH, one of the local television stations owned by Circle City. (Compl. Ex. 1.) "Persons exercising their right of free speech do so to advance the 'public exchange of ideas' essential to a healthy democracy." *Gresk*, 96 N.E.3d at 569 (quoting *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011)). AT&T was exercising its right to free speech when it provided a public statement to WISH about the 1981 Lawsuit. *See, e.g.*, *Brandom*, 975 N.E.2d at 386 (applying anti-SLAPP statute to statements made to a newspaper).

### 2.   AT&T's statement was made in connection with a public issue.

For purposes of the anti-SLAPP statute, the Indiana Supreme Court has held that "speech is in connection with a matter of public concern if it is addressed to 'any matter of political, social, or other concern to the community,' as determined by its content, form, and context." *Gresk*, 96 N.E.3d at 571 (quoting *Love v. Rehfus*, 946 N.E.2d 1, 9 n.6 (Ind. 2011)); *see also 401 Pub. Safety v. Ray*, 80 N.E.3d 895, 900 (Ind. Ct. App. 2017). Indiana Code § 34-7-7-9(b) requires AT&T to "state with specificity the public issue or issue of public interest" that prompted its protected statements to WISH. AT&T can identify at least two.

7

First, the 1981 Lawsuit, alleging racial discrimination in television broadcasting by a large national telecommunications provider, is itself a matter of public concern. In *Pack v. Truth Publishing Co.*, 122 N.E.3d 958, 965 (Ind. Ct. App. 2019), the Indiana Court of Appeals held a news article "published … to inform the community of a federal lawsuit filed against a local public school corporation, which … alleged that the school corporation had engaged in religious discrimination … was in connection with a public issue." The same is true here. *Cf. Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1121-22 (Col. Ct. App. 1992) (holding that "public controversy over [major retailer's] policies toward minorities" and lawsuit alleging "racially discriminatory policies" by the retailer were matters of public concern).

Indeed, one need look no further than Plaintiffs' own conduct to confirm that AT&T spoke on a matter of public concern.  As the document attached to Plaintiffs' Complaint reveals, AT&T made the allegedly defamatory statement after WISH *solicited* AT&T for a "public response" to the lawsuit.  And the subsequent coverage (which features information provided by Circle City and McCoy, as well at the AT&T quote) proves that the subject was, indeed, newsworthy. (Compl. Ex. 2; *see also* Compl. ¶ 12 (reciting that "media reports reported her statement in *news articles covering the 1981 case*" (emphasis added))). The fact that a "matter [is] significant enough to the community that the local [news] devoted several articles to it" is evidence that an issue is a matter of public concern. *Brandom*, 975 N.E.2d at 387.

Second, AT&T's statements to WISH relate to the broader context of AT&T and Circle City's negotiations around a retransmission consent agreement. In the related context of determining whether speech is on a matter of "public concern or interest" for purposes of applying Indiana's requirement that the plaintiff allege and prove that the defendant acted with actual malice, courts applying Indiana law have recognized that "control of a television

broadcasting channel" is a matter of public interest. *Filippo v. Lee Publ'ns, Inc.*, 485 F. Supp. 2d 969, 973 (N.D. Ind. 2007). And Plaintiffs have themselves pleaded that the public has an interest in the outcome of negotiations between MVPDs and local broadcasters for retransmission agreements. (*E.g.*, Compl. ¶ 16.)

### 3. AT&T responded to Circle City's lawsuit in good faith and with a reasonable basis in law and fact.

Finally, AT&T's statement was made "in good faith and with a reasonable basis in law and fact." IND. CODE § 34-7-7-5(2). "Good faith" in this context means "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Nexus Grp., Inc. v. Heritage Appraisal Servs.*, 942 N.E.2d 119, 122 (Ind. Ct. App. 2011) (quoting *Owens v. Schoenberger*, 681 N.E.2d 760, 764 (Ind. Ct. App. 1997)). "Bad faith," on the other hand, "require[s], regardless of truth or falsity, a statement the speaker 'knew … was false or entertained serious doubts as to its truth.'" *Brandom*, 975 N.E.2d at 390 (quoting *Nexus Grp.*, 942 N.E.2d at 123). Statements that are "either true or an opinion" are made "in good faith and with a reasonable basis in fact." *401 Pub. Safety*, 80 N.E.3d at 902. A "defendant's actual state of mind is a critical factor" in determining whether a defendant acted in good faith. *Id.* (citing *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999)).

AT&T's statement was made in good faith. Teresa Mask, who distributed the statement to WISH on behalf of AT&T, responded to an inquiry from Brady Gibson at WISH. Exhibit 1, Mask Aff., ¶ 3.  Mr. Gibson indicated he was seeking a public statement from AT&T "intended to be a response for news coverage only" regarding the 1981 Lawsuit.  *Id.* Mask collaborated with several individuals at AT&T, including public relations personnel, legal counsel, and other individuals with knowledge of AT&T's negotiations with Circle City, and they developed and

9

submitted AT&T's statement. *Id.*, ¶ 5. *See Nexus Grp.*, 942 N.E.2d at 123 (finding that statement was made in good faith and with a reasonable basis in fact when defendant presented evidence of its research of factual basis for statement); *401 Pub. Safety*, 80 N.E.3d at 902 (holding that statements that were "either true or an opinion" were made in good faith). The statement Mask provided reflects the collective subjective understanding of those individuals, based on AT&T's underlying negotiations with Circle City and AT&T's rational explanation that it would not pay retransmission fees for standalone non-Big 4 (ABC, CBS, Fox, and NBC) broadcast stations. Mask Aff., ¶¶ 6-7. In short, the statement Mask provided on behalf of AT&T reflects AT&T's good-faith, carefully developed, and subjective assessment of Circle City's negotiating practices. *See id.*, ¶¶ 5-7. Neither Mask nor the individuals with whom she collaborated acted with any malicious intent or ill will toward Circle City. *Id.*, ¶ 8. AT&T's "actual state of mind is a critical factor in determining" whether AT&T's statement was made in good faith and with a reasonable basis in fact, and there is no evidence that AT&T "intended to harm" Plaintiffs. *401 Pub. Safety*, 80 N.E.3d at 902-03; *see also Nexus Grp.*, 942 N.E.2d at 123 (record that defendant "genuinely believed" its statements were factual established defendant's good faith). Instead, the statement Mask provided was intended solely to respond to WISH's request for public comment regarding the 1981 Lawsuit. *Id.*, ¶¶ 3-4.

Because AT&T's statement to WISH was made (1) in furtherance of AT&T's free speech rights, (2) in connection with a public issue, and (3) in good faith, Indiana's anti-SLAPP statute applies to Plaintiffs' Complaint. *See* IND. CODE § 34-7-7-5.

**B.   AT&T's Statement Regarding Circle City's Lawsuit Was Lawful and Not Defamatory.**

Where, as here, a defendant's speech is covered by the anti-SLAPP statute, the anti-SLAPP statute requires dismissal if the defendant shows that its speech was lawful. *See CanaRx*,

2008 WL 2266348, at *7; IND. CODE § 34-7-7-9(d).  AT&T's speech was lawful (*i.e.*, not

defamatory) for at least two reasons: (i) AT&T's statement was a matter of opinion; not a

verifiable statement of fact; and (ii) it was on a matter of public concern and not made with

actual malice. Additionally, AT&T's statement imputes nothing at all about Plaintiff McCoy.

Based on the straightforward application of Indiana's anti-SLAPP statute, this Court should

dismiss Plaintiffs' Complaint and award AT&T its attorneys' fees. *See* IND. CODE §§ 34-7-7-

7, -9(d).

### 1. AT&T's description of Circle City's negotiating tactics is not a verifiable statement of fact.

Plaintiffs' defamation claim fails as a matter of law because AT&T's characterization of

the 1981 Lawsuit as a "negotiating tactic" is not a statement of objectively verifiable fact

regarding Plaintiffs and is instead a constitutionally protected opinion.

To state a claim for defamation, Plaintiffs must plead "(1) a communication with

defamatory imputation, (2) malice, (3) publication, and (4) damages." *Sheets v. Birky*, 54 N.E.3d

1064, 1070 (Ind. Ct. App. 2016); *see also Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 514

(Ind. Ct. App. 2015). The communication at issue "must be both false and defamatory."

*McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999). A statement is

defamatory only when it "tends to harm a person's reputation by lowering the person in the

community's estimation or deterring third persons from dealing or associating with the person."

*Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009).

Statements that express opinions or do not contain objectively verifiable facts about the

plaintiff are not actionable as a matter of law. *Meyer*, 31 N.E.3d at 515 (holding that "for a

statement to be actionable, it must be clear that it contains objectively verifiable *fact* regarding

the plaintiff") (emphasis added). As the United States Supreme Court has made clear, a

11

"statement[] that cannot 'reasonably [be] interpreted as stating actual facts' about an individual"
is constitutionally protected. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting
*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)). Applying that well-settled rule,
Indiana courts have held that a statement that expresses the speaker's *opinion* is actionable only
if it "implies facts which may be proven true or false." *McQueen*, 711 N.E.2d at 66 (Ind. Ct.
App. 1999); *see also Filippo*, 485 F. Supp. 2d at 980 (to be actionable, a statement must relate to
"*objectively verifiable or testable* facts" (emphasis in original)). "[S]tatements about another
person's attitudes, beliefs, and personality traits constitute protected opinion." *Filippo*, 485 F.
Supp. 2d at 980.

Whether a statement is defamatory is generally "a question of law for the court." *Baker*,
917 N.E.2d at 657. In making that determination, "the communication is to be viewed in context
and given its plain and natural meaning." *N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294,
301 (Ind. Ct. App. 1999). But that context is not limitless: a statement is not actionable if it
requires "a tortured construction to glean" a defamatory imputation. *Jacobs v. City of Columbus
ex rel. Police Dep't*, 454 N.E.2d 1253, 1264 (Ind. Ct. App. 1983).

Here, the "plain and natural meaning" of AT&T's description of the 1981 Lawsuit as a
baseless "negotiating tactic" is a constitutionally protected opinion that reflects AT&T's
subjective characterization of the parties' dealings. Indeed, federal and state courts have
repeatedly held that characterizations of a party's negotiating position or bargaining strategy are
constitutionally protected opinion because they do not express objectively verifiable facts. For
example, in *United Consumers Club, Inc. v. Bledsoe*, 441 F. Supp. 2d 967, 980 (N.D. Ind. 2006)
*amended on other grounds*, 2006 WL 2361818 (N.D. Ind. Aug. 4, 2006), the court held that a
franchisor's speculation that its franchisees' "renewal rates were low because many members

failed to achieve enough savings" was "not objectively verifiable, but merely … his opinion of why franchisee members might not renew" their agreements with the franchisor. *See also Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (holding that description of a party's negotiating tactic as "blackmail" was protected by the First Amendment); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283-84 (1974) (holding that a description of non-union members as "traitors" in the context of a labor dispute was "rhetoric" that could not "be construed as [a] representation[] of fact"). Similarly, characterizations of subjective business motives in the media are not actionable because they lack the specificity and verifiability required to be proven false. *Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 616 (7th Cir. 1996) (characterizing subjective beliefs about business motives as "in the realm of opinion"); *cf. Cummings v. City of New York*, No. 19-cv-7723 (CM) (OTW), 2020 WL 882335, at *22 (S.D.N.Y. Feb. 24, 2020) ("Imputing a motive or state of mind based on that person's publicly reported conduct is not actionable in defamation."). Neither are subjective characterizations of pending litigation. *See Brodkorb v. Minnesota*, No. 12-1958 (SRN/AJB), 2013 WL 588231, at *12-13 (D. Minn. Feb. 13, 2013) (holding that press release issued "in response to … threatened litigation and litigation tactics" that described pending litigation as "blackmail" was not actionable because it "lack[ed] the specificity and verifiability required to be proven false").

AT&T's characterization of the 1981 Lawsuit is constitutionally protected opinion, not a statement of objectively verifiable fact sufficient to support a defamation claim. AT&T's opinion about Circle City's motivation for the lawsuit following an unsuccessful negotiation is constitutionally protected by federal and state law precisely because it is not an "objectively verifiable" fact, much like a franchisor's speculation regarding his franchisees' low renewal

13

rates. *See United Consumers Club*, 441 F. Supp. 2d at 980.  AT&T's speech was lawful, and

Plaintiffs' defamation claim fails as a matter of law.

### 2.  AT&T's response to WISH's request for comment is protected speech because it was on a matter of public concern and AT&T did not act with actual malice.

Plaintiffs' Complaint must be dismissed because AT&T's speech was lawful for another

reason: it was regarding a matter of public concern and Plaintiffs have failed to even plausibly

suggest AT&T acted with actual malice. When the allegedly defamatory speech relates to

"matters of public or general concern," Indiana law requires *all* defamation plaintiffs to plead

and prove that a defendant acted with actual malice, regardless of their status as public figures or

private plaintiffs.[5] *Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 452 (Ind. 1999).

Negotiation of retransmission agreements for the broadcast of local television content and a

federal lawsuit alleging racial discrimination in the negotiation of those agreements are

unquestionably matters of public concern, and Plaintiffs have failed to plead that AT&T acted

with actual malice in responding to WISH's request for comment on the 1981 Lawsuit.[6]

---

[5] Although *Bandido's* involved a media defendant, Indiana courts uniformly apply its "actual malice" standard to cases involving non-media defendants speaking on matters of public concern. *E.g.*, *Poyser v. Peerless*, 775 N.E.2d 1101, 1107 (Ind. Ct. App. 2002) (suit against private school and former employer); *Ratcliff v. Barnes*, 750 N.E.2d 433, 437 (Ind. Ct. App. 2001) (suit against former coworker).

[6] The United States Supreme Court generally has limited the "actual malice" requirement to suits brought by public officials or public figures. *See generally New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967). But the First Amendment sets a floor, not a ceiling, as to the extent to which states may protect speech, and Indiana law goes "beyond that provided by the First Amendment." *Filippo*, 485 F. Supp. 2d at 973. Circle City and McCoy are arguably *at least* limited purpose public figures because they have "thrust[] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Bandido's*, 712 N.E.2d at 454 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). Indeed, Plaintiffs have themselves alleged that McCoy "maintains a high profile in the broadcast industry." (Compl. ¶ 3.) For purposes of this motion, though, Circle City and McCoy's status as public figures makes no difference under Indiana law. *See Bandido's*, 712 N.E.2d at 454.

ACTIVE.125046798.14

### a. AT&T's response to WISH's request for comment was on a matter of public or general concern.

"The public interest is necessarily broad" for purposes of the *Bandido's* actual malice requirement. *Aafco Heating & Air Conditioning Co. v. Nw. Pubs., Inc.*, 321 N.E.2d 580, 590 (Ind. Ct. App. 1974).[7] "Whether a matter is of public concern generally is a question of law to 'be determined by the content, form, and context of a given statement … .'" *United Consumers Club*, 441 F. Supp. 2d at 978 (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). "A matter of general or public interest is one in which '[t]he public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct.'" *Filippo*, 485 F. Supp. 2d at 973-74 (quoting *Fazekas v. Crain Consumer Grp. Div. of Crain Comms., Inc.*, 583 F. Supp. 110, 114 (S.D. Ind. 1984)).

Courts applying Indiana law have found a "panoply of topics within the scope of 'public interest,'" including "matters involving the leadership and control of entities serving the community," "control of a television broadcasting channel," "issues related to public safety and well-being," and even "lighthearted matters" such as "stock car racing scandals" and "college football." *Id.* (quoting *Moore v. Univ. of Notre Dame*, 968 F. Supp. 1330, 1338 n.11 (N.D. Ind. 1997), and collecting cases).

The 1981 Lawsuit is a matter of public interest under *Bandido's*. AT&T provided WISH with a statement after WISH requested a public comment for a news story about the 1981 Lawsuit. (Compl. ¶ 9; Compl. Ex. 1.) Plaintiffs characterize the 1981 Lawsuit as alleging "that AT&T maintains an internal playbook designed to suppress minority-based content." (*Id.* ¶ 8.) That kind of allegation of discrimination against a large "national telecom company" (*Id.* ¶ 4) is

---

[7] The Indiana Supreme Court expressly adopted *Aafco*'s "general or public interest" rule in *Bandido's*, 712 N.E.2d at 452.

ACTIVE.125046798.14

enough, on its own, to make the 1981 Lawsuit a matter of public interest. *See Filippo*, 484 F. Supp. 2d at 974 (characterizing "local management of … television channels" as a matter of public interest, citing *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 483 (7th Cir. 1986)); *see also Lewis* , 832 P.2d at 1121-22 (holding that "public controversy over [major retailer's] policies toward minorities" and lawsuit alleging "racially discriminatory policies" by the retailer were matters of public concern); *cf. Purnell v. Smart*, 976 F.2d 735, 1992 WL 232483, at *2 (7th Cir. 1992) (in context of preliminary injunction analysis, noting that "[r]acial discrimination inherently is an issue of the most serious public concern"). Moreover, AT&T's statement must also be considered in light of its "content, form, and context …, as revealed by the whole record." *United Consumers Club*, 441 F. Supp. 2d at 978. Here, that broader context includes AT&T and Circle City's negotiations related to Circle City's demand for AT&T to pay Circle City retransmission fees to distribute Circle City's local television content to viewers in the Indianapolis market. (*See, e.g.*, Compl. ¶ 6.) Plaintiffs admit that that broader context "is significant," and that disputes between broadcasters and MVPDs are frequently topics of public concern, noting that in such disputes, "consumers … blame the local broadcaster, which causes the broadcaster to receive complaints and related communications from the public." (*Id.* ¶ 16.)

### b. Plaintiffs have not adequately pleaded that AT&T acted with actual malice.

Plaintiffs' Complaint is devoid of any allegation that AT&T acted with actual malice. "Actual malice exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Bandido's*, 712 N.E.2d at 456 (quoting *New York Times*, 376 U.S. at 279-80). And "[t]o demonstrate reckless disregard, 'there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication,' or proof that the false publication was made

16

with a 'high degree of awareness of their probable falsity.'" *Id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)) (citation omitted). Therefore, "a defendant's actual state of mind is a critical factor in the analysis." *Id.*

The actual malice standard is a "very difficult and demanding burden … designed to minimize the 'chilling effect' that libel suits invariably have on the exercise of First Amendment rights." *Moore*, 968 F. Supp. at 1337. As Plaintiffs have themselves pleaded, AT&T's statement was made *in response to* a request for public comment from WISH itself, one of Circle City's television stations. (Compl. ¶ 9; Compl. Ex. 1.) Plaintiffs have pleaded no facts stating a plausible claim that AT&T's honest response to WISH's request for comment and description of the 1981 Lawsuit as a "negotiating tactic" was made with actual malice. Indeed, it is telling that Plaintiffs' Complaint doesn't explicitly deny that the 1981 Lawsuit is a negotiating tactic to get Circle City the retransmission consent agreement it previously demanded.

At best, Plaintiffs have pleaded in a conclusory fashion that they disagree with the contorted insinuations that they allege could be drawn from AT&T's statements, just as they disagree with AT&T's refusal to pay Circle City its requested retransmission fees. (*E.g.*, Compl. ¶¶ 7, 14-17.) But their disagreement with AT&T's negotiating position is not enough to demonstrate that AT&T's statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Bandido's*, 712 N.E.2d at 456 (quoting *New York Times*, 376 U.S. at 279-80). As they have pleaded, AT&T's statement was made in the "context" of the overall negotiations between AT&T and Circle City for a retransmission agreement. (*E.g.*, Compl. ¶¶ 6, 13-14.) And as they admit, in the context of those negotiations, and in defense of the 1981 Lawsuit, AT&T has proffered a legitimate, non-discriminatory reason for its declining to pay Circle City its requested retransmission fees. (*Id.* ¶ 7.) AT&T's description of the 1981

17

Lawsuit as a "negotiating tactic" therefore, is entirely consistent with the facts as Plaintiffs have

pleaded them. But alleged misconduct that is "just as consistent with lawful conduct" cannot

state a plausible claim for relief. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### 3.   Plaintiffs have failed to plead special damages.

Plaintiffs' failure to plead special damages is also fatal to their claims. Indiana law

recognizes two kinds of defamation actions: defamation *per se*, and defamation *per quod*. *See,*

*e.g.*, *Baker*, 917 N.E.2d at 657. Although damages are a necessary element of every defamation

action, damages may be presumed "as a natural and probable consequence of the *per se*

defamation" if a plaintiff adequately brings a claim for defamation *per se. Carson v. Palombo*,

18 N.E.3d 1036, 1042 (Ind. Ct. App. 2014). In all other cases, the plaintiff must plead and prove

"special damages," or "economic or pecuniary loss." *Id.* Here, Plaintiffs' claim does not fall

within the narrow categories of *per se* defamation, and Plaintiffs have failed to plead special

damages.

### a.   Plaintiffs' complaint alleges defamation *per quod*, not defamation *per se.*

Plaintiffs have failed to state a claim for defamation *per se*. In fact, they all but admit

their claim is one for defamation *per quod*. (Compl. ¶ 18.) A plaintiff is only relieved of the

obligation to plead and prove special damages when the allegedly defamatory statement is "so

obviously and naturally harmful that proof of [its] injurious character can be dispensed with."

*Baker*, 917 N.E.2d at 650. Therefore, Indiana courts strictly limit defamation *per se* claims to

statements imputing "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's

trade, profession, office, or occupation; or (4) sexual misconduct." *Columbus Specialty Surgery*

*Ctr. v. Se. Ind. Health Org., Inc.*, 22 N.E.3d 665, 670 (Ind. Ct. App. 2014) (quoting *Newman v.*

*Jewish Cmty. Ctr. Ass'n of Indianapolis*, 875 N.E.2d 729, 739 (Ind. Ct. App. 2007)).

Plaintiffs allege that AT&T's statement implies that Plaintiffs are "stealing from the Indianapolis community by demanding … unreasonable compensation from AT&T." (Compl. ¶ 14.) But AT&T said no such thing, and on its face, AT&T's statement has no defamatory imputation at all, let alone one that imputes the kind of severe "misconduct in a person's trade, profession, office, or occupation" necessary to support a defamation *per se* claim. Indiana courts have refused to find that *all* "allegedly defamatory statement[s] … related to a person's trade, profession, office, or occupation" are necessarily defamatory *per se*. *Wartell v. Lee*, 47 N.E.3d 381, 387 (Ind. Ct. App. 2015). Instead, "defamation *per se* as to one's profession involves actual misconduct as opposed to a generalized opinion." *Sheets*, 54 N.E.3d at 1070-71 (holding that statements that an employee was "aggressive," an "embarrassment," and "not … fit for leadership" were "general assessment[s] of unfitness," not imputations of misconduct in a profession); *see also Baker*, 917 N.E.2d at 658 (holding that a statement that a former employee "had engaged in inappropriate sales practices" did not impute misconduct in a profession); *Wartell*, 47 N.E.3d at 387-88 (holding that "vague comments" and "generalizations" negatively characterizing an individual's job performance are not defamatory *per se*).

Plaintiffs' attempt to plead a claim for defamation *per se* is squarely foreclosed by the Indiana Court of Appeal's decision in *Columbus Specialty Surgery Center*. There, the defendant, a third-party administrator for health plan benefits, notified participants in a health plan that the plaintiff, a surgery center, had "declined to participate in" the health plan's provider network and would therefore be "considered an out of network provider." *Columbus Specialty Surgery Ctr.*, 22 N.E.3d at 667. The plaintiff alleged that the statement was defamatory *per se* because it was "of a kind that tends to damage a reputation in the community and/or discourage others from dealing or associating with" the plaintiff and was "calculated to harm [the plaintiff's] reputation

ACTIVE.125046798.14

in its trade, profession and business." *Id.* at 670. The Indiana Court of Appeals flatly rejected that argument and affirmed the trial court's dismissal of the complaint, noting that "a health care provider may have a rational business reason for declining participation in an insurance provider's network, and an unwillingness to participate does not, without more, indicate any misconduct by the health care provider." *Id.* The same is true here. AT&T and Circle City have a business disagreement about the reasonableness of Circle City's "demands for compensation" (Compl. Ex. 1), and AT&T's characterization of the 1981 Lawsuit as a "negotiating tactic" indicates, if anything, that the parties have "rational business reason[s]" for their failure to negotiate terms of a retransmission agreement. It does not, "without more, indicate any misconduct" by Circle City. *Columbus Specialty Surgery Ctr.*, 22 N.E.3d at 670.

Instead, as Plaintiffs have themselves pleaded, AT&T's statement can only be defamatory in "context." (Compl. ¶¶ 13-14) The majority of Plaintiffs' Complaint is devoted to providing that additional "context." (*See, e.g.*, *id.* ¶¶ 6-8, 11-17.) But Indiana law is clear that a statement that "acquire[s] a defamatory meaning" only "when placed in context or connected with extrinsic facts or circumstances" is not actionable under a defamation *per se* theory. *Jacobs*, 454 N.E.2d at 1264 ; *see also Wartell*, 47 N.E.3d at 385 (Ind. Ct. App. 2015) ("In an action for defamation *per se*, the words used must have defamatory imputation on their face. *The circumstances in which the statements were made have no bearing on whether the statements constitute defamation per se.*" (emphasis in original)).

### b.  Plaintiffs have failed to plead special damages.

Because Plaintiffs' Complaint asserts only a claim for defamation *per quod*, Plaintiffs are required to plead special damages. They have failed to do so.

As for their claimed damages, Plaintiffs allege only that "McCoy and Circle City have been damaged by AT&T's conduct" and that those damages "include[] general reputational damage and special economic damages." (Compl. ¶ 19.) But Indiana law requires a plaintiff alleging defamation *per quod* to plead "special damages as a natural and probable consequence of the defamatory communication." *Carson*, 18 N.E.3d at 1042; *see also Dabagia*, 721 N.E.2d at 304. "Special damages" mean "pecuniary harm" or economic loss. *Carson*, 18 N.E.3d at 1042. Absent pecuniary harm, "[l]oss of reputation alone" or "lowered social standing and its purely social consequences are not sufficient." *Id.* Nor is speculation about future "injury to one's present trade, business, or occupation." *Gibson v. Kincaid*, 221 N.E.2d 834, 837 (Ind. Ct. App. 1966); *see also Moore*, 968 F. Supp. at 1335 (granting motion to dismiss and rejecting allegations of injury to "good name, fame and credit," and decreased "likelihood of obtaining a comparable" position of employment).

### 4.   McCoy's defamation claim must be dismissed.

McCoy's defamation claim also fails because AT&T's statement does not identify him. "Defamatory words are not actionable unless they refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994); *see also Harvey v. Coffin*, 5 Blackford 566, 568 (Ind. 1841). McCoy is not a plaintiff in the 1981 Lawsuit, and AT&T's statement refers only to Circle City, not McCoy individually. (Compl. Ex. 1.)  Circle City and McCoy are legally distinct parties. *See, e.g.*, *Longhi v. Mazzoni*, 914 N.E.2d 834, 838-39 (Ind. Ct. App. 2009). Without "proof of the application of the alleged defamatory words" to *McCoy*, AT&T's statement "could not have been understood … in a manner that would injure [*McCoy*'s] reputation." *Schrader*, 639 N.E.2d at 263. Subsequent news coverage regarding the 1981 Lawsuit, such as the article attached as Exhibit 2 to Plaintiffs'

21

Complaint, or the allegations in the 1981 Lawsuit itself, may have linked Circle City and

McCoy, but *AT&T* did not, and its statement cannot reasonably be interpreted as doing so.

McCoy's individual defamation claim fails for that reason alone.

### III.   In the Alternative, Plaintiffs' Complaint Should Be Dismissed Under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to state a claim

upon which relief can be granted when a complaint fails "to state a claim to relief that is

plausible on its face." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir.

2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court follows a

familiar two-step process in assessing the sufficiency of a complaint under Federal Rules of Civil

Procedure 8(a)(2) and 12(b)(6). First, although a court accepts as true all well-pleaded factual

allegations, the court must disregard "labels and conclusions"; "formulaic recitation[s] of the

elements of a cause of action"; "'naked assertion[s]' devoid of 'further factual enhancement'";

"legal conclusions"; "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements"; and "legal conclusion[s] couched as … factual allegation[s]."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (quoting *Twombly*, 550 U.S. at 555). The federal rules

may not require "detailed factual allegations," but they do require "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Second, after disregarding "allegations in the complaint that are not entitled to the assumption of

truth," the Court determines whether the remaining allegations "plausibly suggest an entitlement

to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *McReynolds*, 694 F.3d at 885 (quoting *Twombly*, 550 U.S. at 570).

ACTIVE.125046798.14

Here, Plaintiffs' Complaint must be dismissed because Plaintiffs fail to allege a plausible

claim of defamation. Moreover, Plaintiffs have failed to plead special damages at all, much less

with the specificity required by Federal Rule of Civil Procedure 9(g).

### A.   Plaintiffs Have Failed To Allege a Plausible Defamation Claim.

For the same reasons that AT&T's speech was lawful for purposes of the anti-SLAPP

statute, *see supra* Section II.B, Plaintiffs have failed to state a claim for defamation in the first

instance.

First, AT&T's description of Circle City's negotiating tactics is not actionable because it

is not a verifiable statement of fact. *See supra* Section II.B.1. Plaintiffs' allegations regarding the

contorted insinuations that they draw from AT&T's statements cannot transform AT&T's

subjective beliefs about Circle City's negotiating behavior into an actionable defamation claim.

*See Jacobs*, 454 N.E.2d at 1264 (statement is not actionable if it requires "a tortured construction

to glean" a defamatory imputation). Moreover, many of the Plaintiffs' allegations in the

Complaint, such as that "the underlying sentiment is that McCoy is stealing from the

Indianapolis community," that AT&T's statement was "designed to impugn McCoy and Circle

City's reputation, character, and standing in the community," or that AT&T "intend[ed] for the

public to develop the false impression that McCoy is the sole cause of the impasse,"  are

conclusory. (*E.g.*, Compl. ¶¶ 14-17.) Plaintiffs are not entitled to support their defamation claim

with conclusory allegations untethered to and unsupported by AT&T's actual statement. *See*

*McReynolds*, 694 F.3d at 885; *Ashcroft*, 556 U.S. at 678-79.

Likewise, AT&T's statement regarding Circle City's negotiations for a retransmission

consent agreement and the 1981 Lawsuit was on a matter of public concern, and Plaintiffs'

Complaint fails to plausibly allege that AT&T acted with actual malice publishing the statement

23

to WISH, in response to WISH's solicitation of a public statement from AT&T. *See supra*

Section II.B.2. "Actual malice exists when the defendant publishes a defamatory statement 'with

knowledge that it was false or with reckless disregard of whether it was false or not.'" *Bandido's*,

712 N.E.2d at 456 (quoting *New York Times*, 376 U.S. at 279-80). Plaintiffs' Complaint does not

plausibly allege that anyone at AT&T entertained serious doubts about the motivations behind

Circle City's lawsuit or that anyone was expressing anything other than a good-faith opinion.

Plaintiffs' conclusory allegations regarding AT&T's desire to "impugn McCoy[] and Circle

City[]" or give the "false impression that McCoy is the sole cause of the impasse" are wholly

unsupported by any factual allegations. (Compl. ¶¶ 15, 17.) Indeed, the Complaint's failure to

challenge AT&T's belief that Circle City was using the lawsuit as a negotiating tactic precludes

a finding of actual malice. Despite their conclusory allegations regarding AT&T's motives,

Plaintiffs have failed to state a plausible claim that AT&T acted with actual malice in responding

to WISH's request for comment with AT&T's honest, subjective belief regarding Circle City's

negotiating tactics.

    **B.** **Plaintiffs Are Required To, and Have Not, Pleaded Special Damages Specifically.**

Because Plaintiffs' Complaint does not state a claim for defamation *per se*, Plaintiffs are

required to plead special damages. Plaintiffs' allegations of special damages fail under Indiana

law. *See supra* Section II.B.3. They also fail under Federal Rule of Civil Procedure 9(g). Rule

9(g) requires special damages to be "specifically stated." A "general allegation of economic loss"

that does not "identify a concrete loss" does not suffice. *Pippen v. NBCUniversal Media, LLC*,

734 F.3d 610, 613-614 (7th Cir. 2013). Nor do conclusory allegations of "substantial

reputational and monetary damages" absent "a specific accounting of those damages or an

explanation of how the purported defamation caused them." *Lott v. Levitt*, 556 F.3d 564, 570 (7th

Cir. 2009) (affirming dismissal of defamation *per quod* claim that made only "general allegations" of special damages and made "no effort to explain how any reputational harm translated into actual harm"); *compare Pippen*, 734 F.3d at 614 (holding that proposed amended complaint that itemized "specific business opportunities" plaintiff lost as a result of allegedly defamatory statement sufficiently stated special damages with specificity). Plaintiffs' conclusory allegation of "general reputational damage and special economic damages" fails to clear Rule 9(g)'s hurdle. Accordingly, in the alternative, Plaintiffs' Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

Indiana's anti-SLAPP statute requires dismissal of Plaintiffs' Complaint, which is nothing more than an attempt to silence AT&T's lawful, non-defamatory exercise of its right to free speech on a public issue. Because AT&T's speech is covered by the anti-SLAPP statute and is lawful, AT&T is entitled to dismissal of Plaintiffs' Complaint under Indiana Code § 34-7-7-9 and its attorneys' fees under Indiana Code § 34-7-7-7.

Alternatively, Plaintiffs' complaint fails to state a claim for defamation and must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have failed to plead an actionable or defamatory statement. AT&T's characterization of the 1981 Lawsuit is constitutionally protected opinion that imputes nothing defamatory and does not identify McCoy at all. Moreover, Plaintiffs have failed to plead that AT&T's statement was made with actual malice, as required for a statement on a matter of public concern. Finally, Plaintiffs have failed to plead special damages. For these reasons, in the alternative to dismissal under the anti-SLAPP statute, this Court should dismiss Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

ACTIVE.125046798.14

Dated: October 9, 2020                    Respectfully submitted,


                                          /s/ *Ryan M. Hurley*
                                          Ellen E. Boshkoff (#16365-49)
                                          Ryan M. Hurley (#24956-49)
                                          Emily A. Kile-Maxwell (#34666-49)
                                          FAEGRE DRINKER BIDDLE & REATH LLP
                                          300 North Meridian Street, Suite 2500
                                          Indianapolis, Indiana 46204
                                          Telephone: (317) 237-0300
                                          Facsimile: (317) 237-1000
                                          E-Mail:  ellenboshkoff@faegredrinker.com
                                                   ryan.hurley@faegredrinker.com
                                                   emily.kilemaxwell@faegredrinker.com

                                          Sara Romine (TX Bar #24067488) (admitted
                                          *pro hac vice*)
                                          AT&T Services, Inc.
                                          208 S. Akard Street, Room 3113
                                          Dallas, TX 75202
                                          Telephone: (214) 757-3387
                                          E-Mail: sr519s@att.com


                                          *Counsel for Defendant AT&T Corp. d/b/a*
                                          *U-Verse and DIRECTV*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2020, a copy of the foregoing was filed electronically and notice of the filing of this document will be sent to the following known counsel and parties of record:

Andrew M.  McNeil
Gregory F. Hahn
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
amcneil@boselaw.com
ghagn@boselaw.com

John Bruster Loyd
Jones, Gillaspia & Loyd
4400 Post Oak Parkway, Suite 2360
Houston, TX  77027
bruse@jgl-law.com

Daniel A. Kirkpatrick
Fletcher, Heald & Hildretch, PLC
1300 North 17th Street, 11th Floor
Arlington, VA 22209
kirkpatrick@fhhlaw.com

*/s/ Ryan M. Hurley*

ACTIVE.125046798.14